## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KENDON AUSTIN, *Individually*
*and on behalf of all Others similarly*
*situated,*

Plaintiff,

|  |  |
|---|---|
|  | Case No: |
|  | 216(b) Collective Action |

v.

N3 LLC d/b/a N3 RESULTS; and
ACCENTURE LLP,

Defendants.

---

## COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE OVERTIME WAGE SECTION OF THE FAIR LABOR STANDARDS ACT (FLSA)

---

Plaintiff, KENDON AUSTIN, individually and on behalf of all other similarly situated persons employed as inside sales representatives ("ISR") from the period of April 2018 through the present who consent to their inclusion in this collective action herein sue Defendants: **N3 LLC, d/b/a N3 Results**, and its parent corporation and joint employer, **ACCENTURE LLP**, (hereinafter referred to collectively as "N3", or Defendants), pursuant to 29 U.S.C. § 216(b), of the Fair Labor Standards Act (the "FLSA") and state as

follows:

## RECITATION OF FACTS

1.     The Plaintiff and the class of similarly situated current and former insides sales employees worked for Defendants under the various job titles of:   Business Development Representative (I, II or III) (BDR), Sales Opportunity Manager (SOM) or Inside Sales Opportunity Manager (ISM), Customer Success Manager CSM), Business Development Manager (BDM), PDM, Account Manager, Account Development Representative, Sales Consultant, Pipeline Manager, Tele Territory Channel Manager, Solutions Consultant, Account Development Rep, Account Executive, Sales Development Manager (SDR), Sales Consultant, or other various job titles who performed substantially the same job of an inside sales representative ("ISR").

2.     The ISR's primary function was to use telecommunications such as telephones, emails and technology to either develop warm business leads for N3 clients or to directly sell the client's business services and offerings to businesses and commercial enterprises from call centers or from remote home locations.

3.     The Plaintiff, and the putative class of similarly situated employees were not compensated for all hours worked over 40 in each and

every work week, and were permitted to suffer to work off the clock in violation of the FLSA or alternatively; the Plaintiff and putative class members were unlawfully misclassified as exempt employees in violation of the FLSA.

4.      Further, even when Defendants did pay a premium for some overtime hours worked, they willfully underpaid ISR by failing to include the value of earned bonuses in the calculation of overtime as required by the FLSA.

5.      Defendants have improperly and willfully withheld and refused to pay Plaintiff and all ISRs overtime wages and premiums for overtime hours worked and in violation of federal law.  Defendants' employment and payroll records will demonstrably show that Plaintiff, and all ISRs were actually hourly, non-exempt employees such that Defendants cannot now and should not be able to claim any exemption to overtime pay, and that Defendants knew that their failure to pay overtime wages to ISR was a willful violation of the FLSA.

6.      At minimum, Defendants acted with reckless disregard for their obligations to pay ISR overtime premiums for all hours worked, and failed to accurately track and record ISR's work hours pursuant to federal regulation 29 C.F.R. § 516.

7.     Defendants knew or should have known that ISRs fail the short test for the executive exemption since they do not supervise two or more full time employees, and their primary job duties are non-exempt sales duties and not management of the business or enterprise nor any department of Defendants.

8.     Defendants knew or should have known that ISRs do not meet the administrative exemption, as their primary job duty does not in involve the use of discretion and independent judgment in matters of significance affecting the company and its management; and that their primary job duty is production and sales, typically non-exempt under the FLSA and as concluded by the DOL regulations and the DOL field operations handbook..

9.     Defendants knew or should have known that ISRs are clearly not outside sales representatives; nor do they meet the § 7(i) exemption. ISRs clearly do not sell retail or retail services, and none of the ISR earned bonuses or commissions which ever exceeded or equated to 51% or more of their total compensation for a representative period.

10.     Defendants have a comprehensive lead generation system such that inside sales representatives do not have to solely rely upon their own contacts and sources to generate sales.

11.     Defendants absolutely know that inside sales representatives

(ISR) routinely worked overtime hours, as managers and supervisors witnessed the extra hours, managers and company officials saw and knew that ISR were accessing telephone systems, CRM databases, emails, and engaged in computer demonstrations outside the standardized mandatory corporate schedule.

12.     Defendants dangled carrots for ISR to advance by publishing and comparing sales production and Key Performance Indicators (KPI), praising the top performers while denigrating the lower performers such that ISRs were pressured to work extra hours to hit sales goals, quotas and KPI to avoid termination.

13.     Further, Defendants willfully discouraged ISRs from reporting overtime hours by both misleading Plaintiffs to believe they were salaried exempt employees and secondly by warning of disciplinary action if the ISR clocked in more than  40 hours on their time records.

14.     Defendants have willfully failed to pay Plaintiffs and all similarly situated employees in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiffs and similarly situated employees were not paid time and a half of their regular rate pay for all hours worked in excess of forty (40) hours per week, nor paid any premium for the overtime hours worked.  Plaintiffs and the class of similarly situated employees did not and

currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendant's pay practice are not only unfair, but unlawful under the FLSA.

15.    In this pleading, the term "Inside Sales Representative" means any employee of Defendants working under the various titles of: Business Development Representative (I, II or III) (BDR), Sales Opportunity Manager (SOM) or Inside Sales Opportunity Manager (ISM), Business Development Manager (BDM), PDM, Account Manager, Account Development Representative, Sales Consultant, Pipeline Manager, Tele Territory Channel Manager, Solutions Consultant, Account Development Rep, Account Executive, Sales Development Manager (SDR) Sales Consultant  or any other title used by Defendants to describe workers who perform substantially the same work as an inside sales representative (discovery may reveal additional job titles and employees that should be included).  Inside Sales representatives in this class make predominantly spend their days making outbound (cold calls), and some inbound phone calls, email solicitations, researching the internet and either making internet presentations or demonstrations and consummate sales of new products or cloud applications, the sale of services for customers or clients of Defendants such as Microsoft, Iron Mountain, Equifax, Ubereats, or Toshiba.

16.    In this pleading, "Defendants" or "N3" means the named Defendants and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein, (discovery may reveal additional Defendants that should be included).

17.    The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

## Jurisdiction & Venue

*18.*    This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §1331*, because this action involves a federal question pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216 (b).*

19.    This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

20.    This Court has personal jurisdiction over the Defendants, because the Defendants operate substantial business in Atlanta, Fulton County, Georgia and the damages at issue occurred within this District, where Defendants maintained an office throughout the relevant time period.

21.    Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b)

because the Defendants reside in this district and because a substantial part of the events giving rise to the claims occurred in this District as Plaintiff was hired from, supervised from and his work was directed by officers and managers from the Atlanta office.

22.     The overtime wage provisions set forth in FLSA §207 apply to Defendants, as all Defendants collectively engage in interstate commerce under the definition of the FLSA.  Indeed, at all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203 as a common business enterprise.  Additionally, Defendants earned more than $500,000 in revenue during the years 2018 to 2020 and would so in 2021 as well.

## The Parties

### Representative Plaintiff, KENDON AUSTIN

23.     Kendon Austin resides in Atlanta, Georgia.  He was first hired to work for Defendants through a temporary agency, Robert Half, beginning in April 2017. He was hired in a wave with numerous other ISR, all of whom started out under the job title of Business Development Representative (BDR).

24.     At all times material, Plaintiff worked as an ISR from the Defendant's Atlanta, Georgia office.  Plaintiff's work was highly supervised,

micro-managed, and scrutinized on a daily basis by management in Atlanta, Georgia, from the Atlanta office located at 6120 Powers Ferry Road, Suite 300, Atlanta, GA 30339-2982.

25.     In January 2018, Plaintiff became a direct hire employee of N3. Thereafter, sometime later in 2018 Plaintiff given or provided a job title of Customer Success Manager.  Manager (CSM).

26.     Regardless of the job title, the primary duties and responsibilities were essentially unchanged and no written job description was provided to Plaintiff for the CSM.

27.     Despite being given a title that included the words "manager" Plaintiff had no role in supervising or directing the work of BDR or any other employees.

28.     Further, Plaintiff's, his primary job duties were to develop leads for the N3 Client, such as Microsoft, by making outbound telephone solicitation calls, sending out solicitation emails, and to develop Microsoft customers who were receptive to discussions about purchasing new or additional products and services of the client, including Microsoft.

29.     Plaintiff, like all other ISR, was required to meet certain metrics which gauged his performance and determined whether he would continue to have a job.  These metrics were called Key Performance Indicators (KPI) and

included making a certain number of telephone calls, and setting a specific number of appointments for the client involved, in attempts to finalize and close a sale of products or services.

30.    Plaintiff further engaged in basic customer service and typical non-exempt work duties, all of which were conducted from a call-center, with ISRs lined up desk by desk.

31.    When hired, Plaintiff, like all other BDR was led to believe the position was a 40 hour per week job, and that he was being paid on a "salary basis" plus the eligibility to earn a monthly or quarterly bonus based upon hitting KPI or other threshold sales goals.

32.    Plaintiff earned a bonus, which was always for him and all other ISR, a very small percentage of their overall income.

33.    Defendants also lead Plaintiff to believe that he was exempt from overtime as a salaried/bonus employee, telling him that no matter how many overtime hours he worked he would not be paid a premium for these hours, and to otherwise not worry about the extra overtime hours worked or the lack of premium pay.

34.    Defendants also discouraged Plaintiff and all other ISR from complaining about not being paid for overtime hours worked and for not being able to report and clock in all hours worked by telling them to focus on earning

their bonuses, hitting their KPI and to be thankful they had jobs.

35.    Plaintiff, like all ISR, including BDR, SOM, CSM etc., was assigned to work on a designed N3 client account called a "campaign".  The campaign meant there was some contractual arrangement between N3 and a business or corporation which hired N3 to engage in sales solicitations of existing or potential new customers.

36.    Each campaign was assigned a team of ISR to commence with calling and emailing of businesses (also referred to as "accounts" or "opportunities" and their employees from a source or pool of leads and to commensurate sales thereby turning the opportunity into an account.

37.    For some ISR, the work involved setting up demonstrations or setting up appointments for other persons to attempt to negotiate and close deals, and also included aspects of customer service.

38.    Plaintiff's primary job duty was not the closing of a sale, but the act of telephoning and emailing the potential customers and developing warm leads for the client's own sales employees to attempt to close sales or upsell, as N3's business focus and the manner in which it was paid was strictly dependent upon the number of phone calls made, not the dollar value or revenue generated by the ISR.

39.    All ISR were compensated on a base hourly rate plus a monthly

bonus payment, either based upon hitting a percentage of goal of reaching key performance indicators (KPI) such as number of dials, number of emails, and number of appointments; or a monthly sales bonus based upon the revenue generated.

40.     All the ISR sales work and communications with customers and was conducted within the offices of Defendants, or, as COVID-19 hit, working remotely from their homes but still reporting to the respect offices and managers.

41.     Plaintiff was paid a base hourly rate of pay, and was classified by N3 as "EXEMPT" under the FLSA; at least that is what Plaintiff was willfully misled to believe at his hiring.

42.     Upon information and belief, sometimes Defendants did permit and authorize directly ISR to work overtime during certain periods of time, and to which they paid the ISR a premium for overtime, thus demonstrating and confirming ISRs were actually non-exempt employees.

43.     All inside sales representatives were paid pursuant to the same common pay plan: a base hourly rate quoted in annual sums to the employees, and eligibility for monthly bonuses or commissions on a sliding scale depending upon reaching the maximum target goal of 100%, and decreasing as the producing met less than 100% of the goals, or alternative with some

multiplier based upon the production.

44.    Plaintiff, like all ISR in the Atlanta office, was given a set weekly corporate schedule of 45 hours per week, 9 hour days with opportunity to take up to a 1 hour meal break.

45.    Plaintiff routinely worked through much of his 1 hour meal break, including working while eating at his desk, or taking a short break to eat and continuing back to work.

46.    At no time did Defendants explain that working through this 1 hour provided meal break was compensable overtime work hours and which could be claimed and paid.

47.    Plaintiff also found it necessary to stay after the ending shift time and put in additional work hours to complete his job duties and to meet KPIs.

48.    Plaintiff similarly performed work on weekends using his laptop, and answering emails, and such work was not foreclosed, prohibited or discouraged by Defendants. Moreover, management knew of and encouraged ISRs to perform work outside the office.

49.    Plaintiff, and all other similarly situated employees are currently now or have previously been covered under FLSA §207 as employees.

50.    Plaintiff routinely worked more than 40 hours in his workweeks, with the knowledge of Defendants, and was never disciplined or warned for

doing so, nor was he paid a premium for all such overtime hours worked.

*The Defendants*

51.   ACCENTURE LLP is a wholly owned subsidiary of ACCENTURE PLC, a publicly traded (ACN) foreign (UK) international corporation, and Fortune 500 company conducting business in the U.S. through its North America Corporate office located in Chicago, Illinois, and selling consulting and processing services.  Accenture LLP has a principal place of business for all North America at: 161 North Clark Street Chicago, IL 60601 United States.  At all times material hereto, Accenture operated from its fixed offices in Atlanta, Georgia located at 3565 Piedmont Rd NE building 3 suite 650, Atlanta, GA 30305, and may be served through its registered agent for service of process, at CORPORATE CREATIONS NETWORK INC.; 2985 GORDY PARKWAY, 1ST FLOOR, Marietta, GA, 30006, USA.

52.   Upon information and belief, Defendant ACCENTURE LLP is a Joint employer within the meaning and definition of the FLSA as it created and enforces the unlawful pay practices complained of as well as manages and oversees its wholly owned subsidiary, and co-defendant, N3's operations and employment practices at its North American operations offices in Chicago, Illinois.

53.    Defendant N3 LLC is a U.S. based company, and wholly owned subsidiary of ACCENTURE LLP, with a principal office located at 3565 Piedmont Rd NE building 3 suite 650, Atlanta, GA 30305.   Defendant may be served through its registered agent CORPORATE CREATIONS NETWORK INC.; 2985 GORDY PARKWAY, 1ST FLOOR, Marietta, GA, 30006, USA.

54.    As stated by Defendants on their 2019 10k, Annual Report, *"Accenture is one of the world's leading professional services companies with approximately 492,000 people serving clients in a broad range of industries and in three geographic regions: North America, Europe and Growth Markets (Asia Pacific, Latin America, Africa and the Middle East)"*.

55.     Defendants ***N3 "is an outsourced Inside Sales firm"***, as stated on its website.  https://n3results.com/company/.

56.    Inside Sales representatives (ISR) primarily worked from physical offices, including Atlanta, Georgia, and South Charleston, West Virginia, but upon information and belief, as of the Covid-19 pandemic, have primarily been reassigned and recruited to work remotely.

57.    Defendants N3 LLC and Accenture LLP are employers within the definition of the FLSA, as they both have revenues exceeding $500,000 annually in all applicable time periods, are  involved in interstate commerce,

and employ thousands of employees across the U.S.

58.     Upon information and belief, at peak times within the preceding 3 years of the filing of this complaint, Defendants employed in the Atlanta and South Charleston offices, upwards of 300 or more inside sales representatives, as well as ISR in New York, Texas and other states.

59.     Given turnover, Plaintiff estimate that the putative class of similarly situated inside sales representatives to be in the range of 2000 persons who worked as ISR within the preceding 3 years from the filing of this complaint, including 300 alone at any given time just in Georgia and WV. The class size of ISR in the Atlanta office, upon information and belief is in the range of 500 for the relevant 3 year class period

60.     N3 was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d), and after the purchase of N3, Plaintiff and all those similarly situated are paid by and performed work for Accenture LLP.

61.     Accenture LLP is a joint employer, and as a purchaser of N3 LLC, is liable for all FLSA overtime claims of the Plaintiff and those similarly situated as a successor pursuant to federal case law.

## General Factual Allegations

62.     This collective action arises from an ongoing, longstanding,

wrongful scheme by Defendants to willfully underpay and refuse to pay overtime wages to a large class of workers, the inside sales representatives, who Defendants knew, and knows still up through the filing of this complaint, routinely worked overtime hours without being paid.

63.    Defendants unlawful pay practice applicable to all inside sales representatives permitting non-exempt, hourly paid commissioned employees to suffer to work overtime hours without being paid a premium through a De Facto unwritten rule and unlawful turning a blind eye to the overtime hours of the inside sales reps was designed to save many millions of dollars in labor costs and decrease expenses, all to the detriment of its inside sales representatives.

64.    Defendants no doubt made a calculated, willful decision to refuse to pay overtime wages under the risk that even if someone or many eventually made a claim for overtime wages, they would have benefited financially from the additional work hours in terms of increased sales, and the fact that the statute of limitations would run on claims before many would even assert their rights under the FLSA.

65.    Despite being an international, publicly traded corporation, with employees throughout the United State of America, including numerous attorney's and general counsel relationships, and having operated in the US

and subject to the requirements of the FLSA for perhaps decades, Defendants have blatantly, and willfully violated the FLSA by:  a) willfully refusing to pay overtime wages when they knew and were aware of employees working overtime hours; b) willfully permitting ISR, who Defendants knew or should have known were non-exempt employees, permitted them to suffer to work off the clock without being paid the proper and lawful premium for all hours worked over 40 in each and every work week; c) willfully underpaid ISR even when paying overtime wages by failing to include bonuses in the regular rate and premium rates of payment of overtime wages; d) forcibly and deceptively mandated each ISR deduct 1 hour from their day for meal breaks even when ISR were working through some or all meal breaks and regardless of this fact; and d) misleading ISR for falsely claiming and representing that they were exempt from overtime or alternatively by deterring and discouraging reporting of overtime hours on time records..

66.     The FLSA does not require employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendants know, or should know, that employees are working overtime hours.

67.     Here, Defendants have maintained for many years the application of a blind ignorance policy, and De Facto off the clock policy, and

have throughout the preceding 3 years of the filing of this Complaint and currently as well, been well aware of their inside sales representatives, including Plaintiffs, routinely working overtime hours without being paid for all hours worked.

**THE PUTATIVE CLASS**

68.     Plaintiffs bring this suit individually, and on behalf of all similarly situated persons composed of the following Class members:

**PROPOSED PUTATIVE CLASS:**

**All person working as inside sales representatives (ISR) under the titles of: Inside Sales Opportunity Manager (SOM or ISOM), Business Development Representative (BDR, I,II or III), PDM, Account Manager, Account Development Representative, Sales Consultant, Pipeline Manager, Tele-Territory Channel Manager, Customer Success Manager (CSM), Solutions Consultant, Account Development Rep, Account Executive, Sales Development Manager (SDR) Sales Consultant, Business Development Manager (BDM), or any other job title used to describe persons whose primary job duty was inside sales, who are currently employed or were previously employed with N3 LLC d/b/a N3 Results or Accenture LLP dba N3 Results within the U.S. within the past three years preceding the filing of this lawsuit.**

**COLLECTIVE FACT ALLEGATIONS**

69.     At the time of this filing, numerous other members of the putative class seek to join this action and demonstrate that there are others similarly situated who seek to join and claim their overtime wages.

70.     Plaintiff is able to protect and represent the Collective or putative

Class or classes, and are willing and able, and consents to doing so.

71.   Plaintiff is a proper Class representatives of all those similarly situated as he was employed by Defendants under the titles of Business Development Representative (BDR), and later or simultaneously as Customer Success Manager (CSM) during his employment, and because:  a) he solicited to sell N3 customer's services and cloud applications;  b) he was paid under the same common pay structure/plan applicable to all other inside sales representatives:  a base hourly rate, with monthly bonuses and treated as exempt under the FLSA; c) he routinely worked overtime without being paid a premium for the hours worked, and d) is familiar with Defendants' policies, procedures and unlawful pay practices.

72.   Upon information and belief, Defendants may also now have, or had within the relevant 3 year class period, employed other sales representatives working from their homes or other offices in other states, which discovery may reveal all as well subject to a single common unlawful pay practice and the same job requirements.

73.   Upon information and belief, the inside sales representatives in the Atlanta and South Charleston offices, and in all other present and former offices and remote locations across the U.S., including NY, Texas working under the various titles are all paid under a common pay plan and all were,

subject to the same job requirements, and all were performing their job duties in similar manners pursuant to shared company policies and procedures.

74.     Defendants' job offer letters to inside sales representatives also demonstrate a common pay plan for inside sales reps:  a base pay, treatment as non-exempt, and a monthly percentage to goal bonus plan.

75.     Similarly, all are inside sales representatives were placed in groups, and assigned a supervisory sales manager to report to, and all inside sales representatives were expected and required to perform their job duties and requirements according to the same national standards and uniform policies and procedures set by the Defendants applicable to all inside sales representatives, aside from any variances due to the specific products or cloud services for the respective customer's produced and services the ISR were soliciting for.

76.     All inside sales representative within this class described herein and working in both officers are now, and were treated as hourly, non-exempt employees, or salaried exempt employees without the Defendants ever taking any individualized analysis of the employees' actual work performed under the FLSA testing the application of any exemptions relied upon.

77.     Defendants policy and procedure as explained to Plaintiffs and all other inside sales representatives, was that if they wanted to be paid for

overtime hours, they had the obligation to track and record their own overtime hours, and, they had to courageous enough to dare submit it to management for payment, understanding that doing so would draw the ire of management.

78.     Defendants failed to advise Plaintiff and all ISR that as per the FLSA, a meal break which is not at least 30 minutes of "**uninterrupted, non-work activity break"** is to be counted as work hours and to be reported and paid, compensable time, even if doing so put the employee into overtime hours.

79.     Defendants also advised and warned that overtime work had to be "authorized", yet, all were pressured to work as many hours as needed to hit goals or quotas, and meet KPI, and pressured to do so under fear of termination of employment.

80.     All inside sales representatives were purposefully mislead to believe by Defendant that they were not legally entitled to overtime wages unless: a) they tracked the time and b) made a request for payment, despite the FLSA requirements that employers are obligated to pay its non-exempt employees a premium for overtime hours worked when they know or should have known of the hours worked.

81.     Defendants also willfully misled employees that they were salaried exempt employees and thus simply by that fact would not be paid for

overtime hours and that the tracking of their work hours was not required nor necessary.

82.     Plaintiff, like otter ISR, understood the De Facto policy was to work off the clock and not clock in until 8:30 am, automatically report 1 hour for lunch and deduct 1 hour from their 9 hour work day, and clock out at 5:30pm and continue to work off the clock.

83.     Upon information and belief, whenever Plaintiff and all other inside sales representatives worked prior to the scheduled shift time, stayed after the shift time ended, or worked through any meal breaks, Defendants monitored, tracked and was fully aware of all employees exceeding 40 work hours, and even encouraged the additional work hours viewing such ISR as "go-getters".

84.     Upon information and belief, Defendants paid each employee the same biweekly base pay as a salary, regardless of the actual hours worked even when under 40 hours, such as 39 or 38, etc. such that Plaintiff and all other ISR were under the impression they were treated as salaried employees.

85.     Defendants paid inside sales representatives either every 2 weeks, and paid out bonuses or commissions at the end of the month under a plan in which the base pay would always exceed the amount of bonuses.

86.     Thus, although Defendants did not actually institute a dedicated

specific time tracking system, time clock or program just for the purpose of tracking employees work hours, (and clearly not one any employee could ever specifically and exactly know when they were reached the 40 hour mark during a work-week such that they would be entitled to overtime pay), through the telephone login system, computer logins and other visual assessments, Defendants clearly knew which employees were working overtime hours and more hours than reported on time records.

87.     Plaintiff, like all inside sales representatives, were assigned a corporate, standardized 45-hour per workweek shift, with 9 hour work days, starting at 8:30 to 5:30 pm, Monday Through Friday or similar 45 hour schedules, Monday to Friday, which varied if calling on west coast or international businesses.

88.     Inside sales representatives could not and did not just come and go as they pleased, like salaried employees, and were subject to discipline if late, left early or took extended breaks during the day or chose to work less than at least 40 hours each week.

89.     Defendants even mandated that ISR report 40 hours on time sheets.

90.     Defendants operated and managed the inside sales representative in a boiler-room type, highly pressurized and oppressive micro-management

style, and assessing their performance based upon minimum number of telephone calls in a day (60 at times), and the overall sales production quotas such as number of appointments.

91.    The Defendants maintained a company-wide policy throughout the relevant 3 year class period of willfully refusing to pay overtime wages or any premium pay for overtime hours worked for inside sales representatives despite, clear knowledge inside sales representatives have worked and continuing to work overtime hours, and as classified under the FLSA, non-exempt employees automatically due such wages.

92.    Upon information and belief, all inside sales representatives are supervised by team leaders and other managers, who very closely monitor performance, scrutinize sales representatives and their performance, metrics, such as phone calls and production and report results to the corporate office under a structured, corporate controlled manner, and all of whom had knowledge of their teams working overtime hours.

93.    Defendants operate a micro-management policy for all inside sales representatives, and they are warned weekly and monthly that their failure to meet sales or production quotas or goals, and telephone call quotas places them on immediate disciplinary action and jeopardy of eventual termination of employment.

94.    Defendants constantly pressured, intimidated and coerced Plaintiffs and all indies sales representatives to work as many hours as necessary to meet quotas, and goals, daily telephone call requirements under threats of formal discipline and termination of employment.

95.    Defendants also discouraged Plaintiff and other ISR from making claims for overtime or reporting more than 40 hours in their weekly time sheets, and from presenting accurate time records.  Some managers simply filled in 40 hours for ISR.

96.    Defendants maintained a ***De Facto*** off the clock policy (although there technically was not a time clock system), in which inside sales representatives were told to focus on their bonuses rather than any overtime pay requirements of the FLSA, and placing them in fear of discipline and termination if they ever dared to submit a claim for overtime wages.

97.    All were told that overtime hours had to be approved in advance, yet, when Plaintiff and other inside sales representatives worked over 40 hours, they were not disciplined for doing so despite Defendants monitoring of their login and logout times on the telephone system.  Managers did not walk around and tell employees to leave when they hit their 40 hours, or were working late.

98.    Plaintiff DOE had to routinely communicate with customers in

the western time zones, and at times, was forced to work until an hour or more beyond his ending shift time on demonstrations, meetings and calls, and sometimes skype video calls. Such additional work hours were expected to be worked by management.

99.  Further, at any given time, one or more managers readily observed and could observe inside sales representatives working before and after the scheduled shift time thus placing them on notice of inside sales representatives likely to incur and be entitled to overtime pay. Defendants simply turned a blind eye.

100.  At no time during the relevant 3 year time period did Defendants formally discipline inside sales representatives for working off the clock overtime hours.

101.  All inside sales representatives followed standardized company policies and procedures applicable to all, and aside from variances in the communications related to the specific products they were selling, all had uniform, standardized and common job requirements for working as inside sales representatives.

102.  The inside sales reps, including Plaintiff and the classes of similarly situated employees all made primarily outbound calls to sell the N3 client's products and services to businesses and professionals from their desks

and with demonstrations on the web.

103.   The actual job requirements performed by the proposed class of Inside Sales Representatives do not satisfy the elements of any exemptions within FLSA §213, whether as Sales Opportunity Managers, Customer Success Managers, BDR/BDM or any other titles used to describe similar roles.

104.   All ISR performed routine jobs whose primary job duty was production, setting and attending appointments and making the sales pitches and demonstrations of the products and services, to upsell or obtain renewals for both assigned accounts any leads given to them by management to communicate with.

105.   Plaintiff, as well as the members of the putative class of similarly situated employees, routinely worked through part or all of their lunch breaks, and also performed other work incidental to their job at home.

106.   Many sales calls and demonstrations had to take place in the evening hours to accommodate business owners and their officers, especially those on the western time zones, so as not to disrupt their business during standard daily working hours.

107.   Pursuant to FLSA §207, Defendants, as the employer of Plaintiff and the class of similarly situated employees, were and is currently required

to pay an overtime premium at one and one-half times each employee's regular rate of pay hourly rate for hours worked in excess of forty (40) hours per week, which must include the value of bonuses or commissions earned in the calculations.

108.   Defendants clearly knew or should have known, that these inside sales representatives do not satisfy any exemption, specifically: a) they fail the executive exemption as they do not supervise other employees, b) fail the administrative exemption as their primary job duty is sales and production, and does not involved the exercise of discretion and independent judgment in matters of significance affecting the company; and c) clearly are not outside sales representatives or engaged in retail sales; d) are not professionally exempt as the position does not require specialized education and training; e) are not subject to any FLSA exemptions because and do not regularly perform exempt duties of an executive, administrative or professional employee.

109.   Moreover, having been operating sales departments and numerous offices in the US, has known of and clearly has been aware of lawsuits against other large companies for not properly compensating inside sales representatives properly pursuant to the FLSA.

110.   The offices did not mandate logging in and out for lunch or meal breaks and the company automatically deducted 1 hour for breaks regardless

of knowledge the employee was working through some or all of their meal breaks and logged into the telephone system.

111.   In order to meet sales quotas and KPI, and maximize their bonus pay, Plaintiff and other sales representatives would routinely work as many overtime hours as they wished with the full knowledge, approval and encouragement of sales Managers/Directors and officers of the Defendants.

112.   Defendants made known the employees who were not hitting quotas and KPI and observed numerous employees including themselves being terminated for allegedly not meeting sales goals and quotas.

113.   Defendants also were and are aware, that in order for inside sales representatives to meet or his 100% of the goals and KPI, inside sales representatives routinely had to work over 40 hours each week, and that the ISR positions were not a 9-5, 40 hour per week position.

114.   Inside sales representatives were warned when falling short of quotas and or KPI, that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas.

115.   Defendants unlawfully placed the onus and obligation on the employee to actually submit and request payment for the overtime hours worked, meanwhile discouraging reporting the overtime hours worked.

116.   Defendants did not maintain accurate and  reliable time records,

as ISR were instructed to submit just 40 hours on the time sheets when turning them in or presenting to Defendants on weekly and bi-weekly basis.

117.   Defendants' representations and communications to employees about the company's obligations under the FLSA and the employees' rights to overtime pay were false and intentionally misleading, as well as unlawful and unfair, as was the entire De Facto overtime policy and failure to track and record on a timekeeping system the employees accurate and actual work hours.

118.   All inside sales representatives were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices, aside from the variances for the separate product lines.

119.   All inside sales representatives attended sales meetings during which the Defendants went over new procedures, policies and sales protocols and was clear to Plaintiffs, applied to all inside sales representatives employed by the Defendant.

120.   Defendants should be well aware that the FLSA requires the regular rate of pay calculation to include not only the base pay, but the bonuses and commissions in the calculation; thus the overtime rates of the Plaintiffs class must be based upon not just the base salary, but the commissions and bonuses as well.  See FLSA sections 778.108, 778.117, 778.208, 778.209.

121.   Evidence reflecting or demonstrating the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

122.   However, and to the extent ESI records are unavailable, Plaintiff, and members of the Class, may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).*

## COUNT I
### *FLSA VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202*

123.   Plaintiff alleges and incorporates by reference all preceding paragraphs of this Complaint and fully restate and re-allege all facts and claims herein.

124.   Defendants have willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to compensate all inside sales representatives as required pursuant to the FLSA's overtime wage provision, Section 207.

125.   Plaintiff and the proposed class of similarly situated, comprised of all current and former persons who worked for Accenture d/b/a N3, or N3 LLC dba N3 Results as inside sales representatives, were denied overtime

compensation pursuant to FLSA §207 as required to be paid by Defendants for all hours worked over 40 in each and every work week.

126.   Plaintiff and all those similarly situated are employees of Defendants during their time as contemplated by 29 U.S.C. § 203.

127.   Defendants do not, and cannot have a good faith basis for failing to pay Plaintiffs and the class of inside sales representatives overtime pay, particularly here when they knew inside sales representatives were working overtime, and discouraged and placed the obligation upon the inside sales reps to formally make a claim for overtime pay.

128.   Further, Defendants were aware and clearly knew Plaintiff and the inside sales rep position was a non-exempt position, subject to the time tracking requirements of the FLSA, and automatically required to pay any non-exempt employee overtime premium when they knew or should have known such employees worked any time over 40 hours in a work week.

129.   Plaintiff, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed at rates of one and one half times their regular rates of pay as liquidated damages. See *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

130.   Defendants knowingly and willfully failed to track the hours worked by Plaintiffs and the class of similarly situated employees, composed

of the Plaintiffs Class in violation of the FLSA and 29 CFR Part 576.

131.   Defendants suggested, encouraged and requested that all inside sales representatives work as many hours as they could to meet or exceed sales goals and KPI as long as they did not report more than 40 hours without prior approval, but meanwhile had direct or constructive knowledge of inside sales representatives working overtime hours yet willfully chose not to compensate Plaintiff and the class of similarly situated.

132.   Again, the FLSA requires Defendants to pay the overtime wages when they know employees "worked" over 40 hours in any work week, and does not permit an employer to escape or nullify its obligations by placing the duty on the employee to formally submit the hours and make a claim for overtime pay.

133.   Regardless, the entire company policies and procedures related to work hours are oppressive, misleading and intended to discourage and prevent inside sales representatives from ever making a request or claim for overtime pay due to fear and intimidation of being terminated from employment.

134.   Defendants made clear to the inside sales representatives that they were not going to be paid overtime wages and that requesting such was going to subject them to heightened scrutiny, discipline and potentially

termination.

135.   Defendants have failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 *et. seq*., including 29 USC Sec. 211(c) and 215 (a).

136.   Alternatively, even if Defendants paid Plaintiffs and the class of similarly situated on a salary basis, Defendants knew or should have known that the act of paying Plaintiffs and all inside sales representatives on a salary, exempt basis without overtime pay, is unlawful and evades the wage and hour requirements of the FLSA such that a 3 year statute of limitations applies.

137.   Defendants knew and had reason to know, that overtime wages are to be paid at one and one half times the employees' regular rates of pay to include all compensation earned but, as a means to save hundreds of millions of dollars in labor costs, willfully chose to either misclassify the inside sales rep position as exempt or simply chose to institute policies, procedures and practices which both discouraged employees against making a claim for overtime pay and by not themselves paying overtime wages when they knew or should have known employees were working overtime without being paid for all hours worked.

138.   Here, Plaintiff and the inside sales representatives are not

technically working "off the clock" as Defendants never had any time clock, but, Defendants did maintain a De Facto unwritten policy which was that any submission or claim for overtime would result in disciplinary action, scrutiny and termination of employment, and that the employees were expected to meet their quotas and goals regardless of the hours necessary or they would be fired.

139.   Again, Defendants were well aware that in order to meet quotas and goals, inside sales representatives would have to routinely or even occasionally work overtime hours, and that the inside sales rep position was simply not a 40 hour per week job.

140.   Upon information and belief, even when Defendants did pay overtime wages, they willfully underpaid ISR by failing to pay time and ½ of each employee's regular rates of pay by failing to include bonuses in the calculations and rates paid.

141.   To summarize, Defendants have willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiffs and the class of similarly situated employees by:  a) willfully withholding payment of overtime wages when they knew or should have known Plaintiffs and the class of inside sales representatives actually worked over 40 hours; b) misleading and falsely advising Plaintiffs that they were not entitled to overtime pay; while simultaneously discouraging ISR against

reporting more than 40 hours; and c) not properly tracking and recording all work hours of inside sales representatives; and d) even when paying overtime wages, willfully underpaid employees by failing to include the value of bonuses earned in the regular rate and thus the overtime rates of pay.

142.   Alternatively, Defendants have willfully violated the FLSA by inside sales representatives as exempt in violation of the FLSA, as similarly, no such exemption under the FLSA exists and they did not have a good faith basis for misclassifying any inside sales representative as exempt under the FLSA.

143.   Defendants have intentionally refused to notify their employees that it has violated the FLSA by not paying overtime wages in the past, and have intentionally misled employees about their rights under the FLSA as to past overtime wages for overtime hours worked and about entitlement going forward.

144.   As a result of Defendants willful violations of the FLSA, Plaintiff and the proposed putative class, comprised of all other employees similarly situated, have suffered economic damages by Defendants' willful failure to pay overtime compensation in accordance with FLSA §207 and unlawful pay practices.

145.   Due to Defendants' willful violations of the FLSA, a three-year

statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

146.   As a result of Defendants' unlawful acts and pay practices, complained of herein, Plaintiff and all other similarly situated present and former employees working as inside sales representatives under various job titles, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated past and present inside sales representatives who worked for Defendants in the 3 years preceding the filing of this complaint to the present, seek the following the following relief:

a.   Designation of this action as a collective action.

b.   That Plaintiff be authorized to give notice of this collective action, or that this Court issue such notice at the earliest possible time; to all past and present inside sales representatives employed by SAGE at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class;

c.   Designate the Named Plaintiff as Representatives of the

       Collective Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

d.     That all past and present inside sales representatives be informed of the nature of this collective action, and similarly situated employee's right to join this lawsuit if they believe that they were or are misclassified as an exempt employee;

e.     That the Court find and declare Defendants in violation of the overtime compensation provisions of the FLSA;

f.     That the Court find and declare Defendants' violations of the FLSA were and are willful;

g.     That the Court enjoin Defendants, under to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Plaintiff Class.

h.     That the Court award to Plaintiff and the Plaintiff Classes, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

i.     That the Court award Plaintiff and all other persons who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

j.     That the Court award Plaintiff a Class Representative service fee award for the justice they sought out for so many and their services in this case as representatives for the putative class and to their counsel;

k. That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendants unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendants from further violating the FLSA;

l. That the Court Award Pre-judgment and post-judgment interest, as provided by law, and;

m. That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.


Dated: April 4,  2021

Respectfully submitted by:

_____

/s/*MITCHELL L. FELDMAN,*
ESQ.GA Bar: 25779
**1201 N. Peachtree Street, NE**
400 Colony Square, #200
Atlanta, Georgia 30361
Tele: (877) 946-8293
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff.*