## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KENDON AUSTIN, *Individually*
*and on behalf of all Others similarly*
*situated,*

Plaintiff,

Case No: 1:21-cv-01354-TWT
216(b) Collective Action

v.

N3 LLC d/b/a N3 RESULTS; and
ACCENTURE LLP,
Defendants.
_____.

## PLAINTIFF'S UNOPPOSED MOTION AND BRIEF IN SUPPORT OF APPROVING THE PARTIES' FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT AND AUTHORIZING NOTICE OF SETTLEMENT TO THE PUTATIVE CLASS

Plaintiff, KENDON AUSTIN (the "Named Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, on behalf of 20 additional party plaintiffs that have opted into this action (the "Current Opt-In Plaintiffs") and all other persons who are or were previously employed by Defendants as Business Development Representatives (I, II, or III), Inside Opportunity Managers, and Senior Inside Opportunity Managers who at any time during the Collective Period: (a) worked at or were based out of Defendant N3 LLC's ("N3") business location in Atlanta, Georgia; or (b) worked remotely within the state of Georgia for N3 or Accenture LLP ("Accenture") (collectively, N3 and

1

Accenture are referred to herein as "Defendants") (to the extent Accenture becomes a successor to N3) (the "Collective Members"), herein files this Unopposed Motion seeking approval of the Parties' Collective Action Settlement Agreement and for Authorizing Notice of the Settlement to be delivered to the putative class in the above-captioned matter.  Since the Named Plaintiff's action and claims for overtime compensation arise under the Fair Labor Standards Act ("FLSA"), the Parties' settlement must be approved by this Court, and said approval must be entered as a final judgment, before the Named Plaintiff, the Current Opt-In Plaintiffs and the Participating Collective Members can receive the overtime wages contemplated by the settlement of this matter. Plaintiff attaches hereto as **EXHIBIT A** the FLSA Collective Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement") executed by the Parties.  A proposed Class Notice of the Settlement to the Named Plaintiff and Current Opt-In Plaintiffs is attached as **EXHIBIT A** to the Settlement Agreement, a proposed Class Notice of the Settlement to the Collective Members is attached as **EXHIBIT B** to the Settlement Agreement, and a proposed Consent to Join/Claim Form is attached as **EXHIBIT C** to the Settlement Agreement.  Further, the Court has already determined that the Named Plaintiff, the Current Opt-In Plaintiffs, and the Collective Members are similarly situated for purposes of conditional certification, and the Parties herein having reached a

settlement pre-notice for all those similarly situated, request entry of this Consent Judgment and approval of the Settlement Agreement.

## I.  **Legal Principles**

Pursuant to the case law in the Eleventh Circuit regarding settlement of claims arising under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et. seq.*,  FLSA claims can be settled and released by employees in two ways.  First, § 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b) of the FLSA, or a collective action by multiple employees to recover against an employer as outlined in § 216(b) of the FLSA, employees may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement. *Id*; *see also Sculte, Inc. v. Gandi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8, 90 L.Ed. 1114 (1946); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947).  In explaining the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.    If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

The standard for approval of an opt-in settlement, such as under the FLSA, is generally lower than for a traditional Rule 23 opt-out settlement because an opt-in settlement does not implicate the same due process concerns as does a traditional Rule 23 settlement.  *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984). "[T]o warrant certification as a collective action under §216(b) of the FLSA, a plaintiff must make at least 'a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 18, 2005); *see also Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) ("As emphasized above, the question at this early stage is only whether, applying a 'lenient' standard, the court is satisfied that plaintiffs, through their allegations, affidavits and other

evidence, have met their 'minimal' burden of demonstrating entitlement to a 'preliminary' determination that they are similarly, even if not identically, situated with respect to their FLSA claims.").

The proposed Settlement of this instant action arises out of an action brought by the Named Plaintiff against the Defendants, which was adversarial in nature. During the litigation and settlement of this action, the Named Plaintiff and Defendants were represented by experienced counsel who previously have handled complex and large FLSA collective actions such as this. The settlement of the instant action thus involves circumstances under which the Court may approve the Parties' settlement to resolve and release the Named Plaintiff's, the Current Opt-In Plaintiffs', and the Collective Members' FLSA claims against Defendants. The Court has already found the Plinatiffs similarly situated to the opt in pliantiffs and conditionally certified this collective action. Although most courts agree final certification is unnecessary for settlement, the parties agree that for settlement purposes they are similarly situated and should be finally certified as such.[1]

---

[1]A final certification decision is not required. In deciding whether a settlement is fair and reasonable, no binding precedent requires different treatment of an FLSA collective action and an FLSA individual action. *See Mygrant v. Gulf Coast Restaurant Group, Inc.*, No. 18-0264-WS-M, 2019 WL 4620367, at *7 (S.D. Ala. Sept. 23, 2019) ("The only potential justification the Court discerns for requiring final certification prior to settlement approval is one of authority. If the FLSA or binding precedent commands such a result, the Court is of course powerless to do otherwise. As noted, however, there appears to be no such directive."). Also, Plaintiffs note that "Defendants, *for settlement purposes in this specific case only*, stipulate to final certification and do not oppose Named Plaintiff's assertion that all Eligible Settlement Members were 'similarly situated . . .'" (Doc. 89 at 22, n. 11) (emphasis in original). In opting-in, Plaintiffs authorized Plaintiffs' counsel "to represent me and make decisions on my behalf concerning the litigation and any settlement." (Doc. 49-2). And Plaintiffs who elect not to participate in the settlement (by declining to deposit or otherwise negotiate their settlement checks) are not bound by the release of

## II.    <u>The Disputed Issues in Adversarial Action at Hand</u>.

In accordance with the legal principles outlined above, the Parties respectfully request that the Court approve the Parties' negotiated settlement of the claims of the Named Plaintiff, all Current Opt-In Plaintiffs, and all Collective Members.   The Parties agree that the instant adversarial action involves disputed factual and legal issues, including whether Named Plaintiff, Current Opt-In Plaintiffs and Collective Members performed work "off the clock" which they were not compensated for and whether certain bonuses were required to be included in the regular rate for overtime purposes (including whether they were or were not included)..

Defendants contended as presented in their papers in opposition to Plaintiff's Motion for Conditional Certification, their Answer and Affirmative Defenses and even in the 26f Joint Discovery plan, that the Plaintiffs did not perform any compensable and awardable off the clock overtime work and that all overtime was paid at the correct regular rate.   Conversely, the Named Plaintiff and the Current Opt-In Plaintiffs contend that they all worked in excess of forty (40) hours per week routinely throughout their employment with Defendants and did not receive overtime pay for all such hours worked and that the overtime paid was not at the correct regular rate.   The disputed questions of fact included (i) whether the

---

claims. Under these circumstances, conditional certification suffices for the Court to review the parties' settlement for final approval.  *McGuire v. Intelident Sols.*, No. 8:18-cv-02995-T-23SPF, 2020 U.S. Dist. LEXIS 257582, at *9 (M.D. Fla. Sep. 2, 2020)

Defendants had any knowledge of off the clock work as required to be compensable wages; (ii) the number or amount of overtime hours worked by the Named Plaintiff, the Current Opt-In Plaintiffs, and Collective Members during each workweek, if any; (iii) whether overtime damages, if any, should include all the bonuses earned in the regular rate of pay for purposes of then calculating the appropriate overtime rates; (iv)  whether Defendants failed to include the bonus money in the overtime rates; (v)whether the correct rate of pay must be time and one half the regular rate of pay and not the  ½ time alternative method pursuant to 29 CFR 779.519; (vi) whether the Named Plaintiff, the Current Opt-In Plaintiffs, and Collective Members are entitled to recover liquidated damages; (vii) whether Defendants' alleged actions in not paying overtime premiums and permitting off the clock work, or allegedly failing to include the bonuses earned in the regular and overtime rates paid for Collective Members were willful violations such that a 3-year SOL should apply; and (viii) whether in fact, the Collective Members are similarly situated such that they could proceed collectively to trial under representative testimony.

Defendants denied the allegations made by the Named Plaintiff, and the facts alleged by the Current Opt-In Plaintiffs' declarations filed in this action.   If Defendants had prevailed on some or all of its defenses, the Named Plaintiff and the Current Opt-In Plaintiffs could have received less damages than they are receiving under the Settlement Agreement, or perhaps nothing at all.    Additionally,

Defendants asserted good faith and reasonable grounds for their pay policies which could have precluded the Named Plaintiff and the Current Opt-In Plaintiffs from recovering liquidated damages (i.e., double damages), and similarly that any alleged exclusion of the bonus from overtime pay was based upon reasonable grounds such that any finding of willfulness and applying the 3-year SOL could have been rejected by the jury. *See* 29 U.S.C. § 260. Moreover, had the litigation necessarily gone through its stages, from notice, and into opt-in discovery, after what could be yet another full year through the discovery process, Defendants were contending they would seek to file a motion to decertify the action. If the Court were then at stage 2, after completion of upwards of a year or more of hard fought, time consuming and costly discovery, grant decertification, 2 years of costly litigation on both sides would have been for naught, and moreover, another 2 years of litigation may have ensued for between hundreds or up to potentially thousands of individuals cases in this District as they pursued their individual overtime wage claims. It cannot be lost in this approval process that many of the putative class, especially current employees, based upon experience and history, would not even individually bring their claims, file individual lawsuits, and receive a settlement for unpaid or underpaid overtime wages due and owing to them. Moreover, many putative class members would only have been entitled to nominal sums if they fully prevailed, and many would not recover anything if they could not prove willfulness and the

entitlement to a 3-year SOL (the Parties have agreed to a 3-year SOL for purposes of this Settlement).

The Parties ultimately recognized the inherent costs in proceeding with large scale collective action litigation (the class size is approximately slightly over 1000 members); as well as factored in the risks of going to trial and the unknown and sometimes unpredictable nature of jury decisions. For Plaintiff Austin, that risk also included the distinct possibility that he might recover nothing, or far less than he and all the Current Opt-In Plaintiffs and Collective Members are recovering under the Settlement and the potential for any decision to take 2 years for finality or longer if appeals are filed.  For Defendants, that risk included the prospect that the recovery of the Named Plaintiff and the Current Opt-In Plaintiffs, and those who would opt into this action, might exceed that which they have agreed to pay in the Settlement, and that even if decertification was a possibility, they could face many hundreds of individual lawsuits all in this District and be tied up in court for years, spending potentially incurring significant attorney's fees along the way.  At this juncture there are only 21 people, but after notice, that number could grow to 400 or even 500 people, and some percentage may claim substantially more unpaid hours than even the Named Plaintiff and the Current Opt-In Plaintiffs.

Weighing all the inherent litigation risks and facing a now or never path of 1 to 2 more years of costly, time consuming and disruptive litigation, the Parties

agreed to engage in an early mediation to exhaust settlement negotiations. Defendants already agreed to mediate for the class of Collective Members before the Court's order granting conditional certification, and thus the Parties continued with that mission on the date agreed upon. On March 25, 2022, the Parties attended a full day mediation before experienced employment lawyer and mediator Chad Schultz, Esq. The Parties ultimately reached an agreement to settle the claims at issue here for the Named Plaintiff, the Current Opt-In Plaintiffs, and the class of Collective Members, pursuant to which a common fund is established for the claims of each person on a pro rata basis pursuant to each individual's total earnings during the 3-year class period as compared to the total class wages for that same period. The Parties herein, by and through their experienced undersigned attorneys, represent to the Court that the settlement is fair and reasonable and stand behind this Settlement. Like in any settlement and compromise, of course the Plaintiffs wanted more money, meanwhile the Defendants wished to pay less. Through the assistance and intervention of mediator Chad Shultz, Esq., this settlement, in the sum of up to $1,750,000.00 was reached. The Parties agree that the terms of the settlement reached reflect a reasonable "give-and-take" on the major issues in dispute. Specifically, Defendants agreed to factor in the underpayment of FLSA wages and the damages at issue with a 1.5 overtime rate vs. the half time rate, as well as agreeing to use a three-year statute of limitations period. Similarly, the Plaintiffs have agreed

to accept less than the maximum damages they might have been awarded by a jury. However, based upon the complex damages model created by Plaintiff's counsel using all the payroll records for the entire class and the declarations of the Named Plaintiff and the Current Opt-In Plaintiffs, this Settlement obtains the equivalent of 2 hours of overtime wages per eligible or net workweeks, meaning those weeks in which the person at least clocked 38 hours of time and worked the week rather than being on vacation or using PTO which would invalidate the workweeks as eligible for overtime pay. Now, to account for the variances in overtime rates for the Collective Members, who earned bonuses and had different base rates of pay, the ultimate net settlement payment per class member using the W-2 earnings for the respective class period works out to be the most fair and equitable means of calculating each Collective Member's share of the common fund in accordance with the terms of the Settlement Agreement. Those who earned more in bonuses, or who had higher base rates of pay, will receive a higher pro rata share of the settlement fund.

The Plaintiff, his undersigned attorneys, and Defendants, extensively discussed the alleged overtime hours and pay rates and formulated their own proposed damage models and best- and worst-case scenarios based upon their independent calculations. The Parties then engaged in a full day formal mediation, involving detailed settlement discussions, vigorous debates about the law and the

overtime rates as well as the value of the damages for the putative class based upon their independent calculations.  The Parties, with advice of their very experienced class and collective action attorneys, reached a compromise for all Collective Members.  All Parties were counseled and represented by their respective attorneys throughout the litigation and mediation process and exchanged information, records and numerous legal arguments and cases on point construing the FLSA.  The Parties reviewed and assessed the potential risks of litigation with their respective counsel. The Parties agree that the negotiated terms of the settlement, as summarized below, reflect a reasonable arms-length compromise of a bona fide dispute and all the disputed issues, and that the negotiated settlement is in the Parties' best interest, and that of this Court and in the interests of Justice. The courts should favor early settlements of FLSA large collective actions, which may avoid hundreds of thousands of dollars in fees and costs on each side and clog the court with a large amount of discovery issues and motions usually occurring in large scale collective actions such as this one.

**III.**        **Terms of Settlement.**

**A.    The Common Fund**

The Parties have agreed to settle for a total common fund of One Million Seven Hundred and Fifty Thousand  Dollars ($1,750,000.00). The breakdown of the common fund is as follows:

    i.      $1093,506.75 available for individual settlement payments to the Named Plaintiff, the Current Opt-In Plaintiffs and Collective Members, for wages and liquidated damages;

    ii.     33.33%. of the gross settlement fund, subject to court approval, in the sum of ($583,275.00) for attorneys' fees and $3,218.25 of costs to be reimbursed to Plaintiffs' Counsel;

    iii.    $17,500.00 for settlement administration costs; and

    iv.    the optional payment of $2,500.00 to each of the Current Opt-In Plaintiffs and named Plaintiff Austin, in consideration for executing a general release and waiver.

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, *15 (S.D.N.Y. Mar. 2, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Id.* at 1354; *McMahon*, 2010 U.S. Dist. LEXIS 18913 at *16; *Mohney*, 2009 U.S. Dist. LEXIS 27899 at *13. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353. In determining whether an FLSA settlement is fair, the district court should examine four factors:

1. Was the settlement achieved in an adversarial context?

2. Were the plaintiffs represented by attorneys who can protect their rights?

3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?

4. Is the settlement fair?

**B. All of the Relevant Criteria Support Approval of the Settlement Agreement.**

After scrutinizing the Settlement, this Court should find that it is fair and reasonable and should be approved.   First, the settlement was achieved in an adversarial context and in the absence of collusion.  The Settlement Agreement is the result of over 1 full year of litigation, discussions, exchange of and review of various employer records, information, and review of ESI, the declarations of the party Plaintiffs, the Order of this Court granting conditional certification, and ultimately attending the full day mediation with an exchange of damages models and a mediated settlement.  "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Matheson v. T-Bone Rest., LLC*, 2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).  Additionally, the use of a mediator further demonstrates that no collusion occurred.  *D'Amato*, 236 F.3d at 85 (a "mediator's involvement in precertification **settlement** negotiations

14

helps to ensure that the proceedings were free of **collusion** and undue pressure.")  In a similar case, the honorable **Leigh Martin May** approved of a pre-notice FLSA settlement agreement in the case of *Venable v. JW LOGISTICS, LLC*, 1:17-cv-03213-LMM, (NDGA),  Document 32 Filed 08/27/18.

Here, in order to arrive at the common fund amount, the Parties used all of the actual average weekly payroll records for the Named Plaintiff, the Current Opt-In Plaintiffs, and the Collective Members, and assumed that each individual, depending on which office they were employed, worked (2) hours of overtime hours per eligible full work week, regardless of whether they in fact had worked such overtime hours, and did not exclude those weeks in which an employee had actually clocked some overtime hours, given that there were allegations of working through some or all of the 1 hour provided meal breaks on a routine basis.

**C.    Calculation of Payments to Settlement Class Members**

With respect to the net amount available for individual settlement payments to the Named Plaintiff, the Current Opt-In Plaintiffs, and the Collective Members who accept the Settlement and consent to participate, each Collective Member who opts in will be paid pursuant to the formula calculated and agreed to by the Parties. The formula is as follows in ¶ 49 of the Settlement Agreement:

**"49. Individual Settlement Payments will be calculated and apportioned from the Net Settlement Fund based upon each Collective Member's pro-rata share of the overall wages paid to the Collective Members during the Collective Period to account for variations in Collective Member's pay rates and bonuses**

**earned. To determine each Collective Member's estimated "Individual Settlement Payment" from the Net Settlement Fund, the Settlement Administrator will use the following formula: First the Settlement Administrator will calculate the Collective Period Wages. Then each Collective Member's Individual Wages will be calculated. Each Collective Member's Individual Wages will then be divided by the Collective Period Wages to determine each Collective Member Pro Rata Share. Each Collective Member's "Individual Settlement Payment" will then be calculated by multiplying each individual's Collective Member Pro Rata Share by the Net Settlement Fund. The Individual Settlement Payment will be reduced by any required deductions for each Participating Collective Member as specifically set forth herein, including employee-side tax withholdings or deductions."**

## IV.   The Settlement Was the Result of Arm's Length Negotiations Free from Collusion

The Agreement was the result of one year of hard-fought adversarial, arm's length negotiations that took place over the course of a full day mediation before experienced, collective action attorney and mediator Chad Shultz, Esq. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001).

A. **Settlement was Arm's-Length**.

Here the Settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion. The Parties were able to settle this action only after they engaged in a vigorous and comprehensive vetting and attending a full mediation negotiating and arguing over numerous disputed issues of law and fact in this

matter. *Diaz v. Hillsborough County Hos. Authority,* 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). The extensive litigation activities, including the motion for conditional certification, show the adversarial nature of this litigation and settlement. Therefore, the Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' counsel believes that on inspection this Court will join them in concluding that the proposed settlement and Stipulation is fair, reasonable, and worthy of approval. It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs and Collective Members were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to coverage [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Lynn's Foods,* 679 F.2d at 1353-54.

B. **The Distribution Will Be Equitable**.

Distributions from the Settlement fund will be equitable and based upon each person's W-2 earnings within the class period for Defendants in accordance with the

terms of the Settlement Agreement. This is meant to account for variations in base pay and bonuses or commissions earned. Additionally, each member of the class will receive the equivalent of 2 hours of overtime pay for 97.5% of each of their eligible net workweeks. Each Class Member who timely files a Consent to Join Form will receive a share of the settlement fund based upon the above analysis.

**C    APPROVAL AT THIS STAGE IS FAIR, REASONABLE AND SHOULD BE ENCOURAGED BY THE COURT**

Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *Hernandez v. Merrill Lynch & Co., Inc.*, 2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *see Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *see also Diaz v. E. Locating Serv. Inc.*, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case). The Parties here acted responsibly in reaching an early settlement agreement and the putative class members have benefited by having the opportunity to opt-into this action, with full disclosure of the terms of the settlement agreement, without having had to file their own separate lawsuit. Moreover, if any putative class members should decide not to opt-into this collective action then they will not be bound by the terms of the

Settlement Agreement and maintain their right to pursue their own claims, unlike in a Rule 23 class action, where they would be bound if they failed to opt out or ignored the notice.

In addition to being fair to the putative Collective Members because they will be fully apprised of the terms of the settlement agreement before deciding whether to opt-in and be bound by the terms of the Settlement Agreement, the Settlement Agreement is also fair on its face because each putative member that does opt-in will receive a pro-rata share of the applicable settlement fund based upon their W-2 earnings while working for Defendants during the relevant class period in accordance with the terms of the Settlement Agreement, and regardless of whether they worked any overtime at all.

This Settlement Agreement provides substantial monetary relief that is fair, reasonable, and adequate, and therefore supports approval pursuant to ***Lynn's Food Stores, Inc. v. United States Department of Labor***, **679 F.2d 1350, 1352-53 (11th Cir. 1982).** For instance, Plaintiff Austin will receive a gross share of $896.21 which is far from the highest individual gross settlement share, which is $7,181.97 for the top Collective Member (if he or she decides to opt in). The average gross wage individual payment is $4,400.00, while the average net settlement payment for a class member, after fees and costs, is $1,819.13. These settlement payments are based upon an average overtime rate of $37.03 per hour, and equate to the payment

or recovery of 2 hours of overtime wages for 97.5% of every Collective Member's eligible workweeks during a 3-year SOL period, which as we know, if there was no willful violation here, the entire 3rd year, or 1/3 of the wages recovered would essentially be nullified and not recoverable.  Here, Plaintiff Austin and Plaintiff's counsel have recovered substantial wages for many class members who, because of the 2-year SOL would otherwise be time barred and would have received $0.00. Further, for many other class members, they have as well now recovered wages for upwards of a full year that would have been wiped out by the running of the SOL unless at trial, the Defendants were found to have committed a willful FLSA violation.  For all these reasons, the Settlement Agreement is fair and reasonable, and in fact an excellent result for all and should be approved.

## D.  Final Approval Hearing under FLSA section 216b Is Unnecessary Because the Settlement Agreement Is Fair on Its Face

Section 216(b) does not require a "fairness" hearing which is otherwise required for settlements of class actions brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, which binds all putative class members to the case and settlement outcome, unless class members affirmatively opt-out of the class administration. *Martinez v. Silveira*, 2011 U.S. Dist. LEXIS 143865 (E.D. Cal. Dec. 13, 2011).  This is because, unlike a Rule 23 class action where all putative class members are joined in the action unless they affirmatively opt-out, under 29 U.S.C.

§ 216(b) of the FLSA, class members must "opt-in" to the class by filing a written consent with the Court to be bound by the outcome of the case.

Each putative Collective Member that receives a Notice will be provided, among other things, a description of the settlement methodology which will fully explain to them how their individual settlement share was determined. Therefore, the opt-in procedure under 29 U.S.C. § 216(b) of the FLSA protects against any putative Collective Member from being a part of a settlement which they do not wish to be a part of. Any putative Collective Members who decide not to opt-in to this lawsuit, after being fully apprised of the terms of the Settlement Agreement, will retain all the rights they otherwise have under any wage and hour laws. Therefore, there is no need for a "fairness" hearing to protect putative Collective Members from being bound to an agreement they would otherwise object to because such protections have already been accounted for in the Agreement and Notice procedures. **See Exhibits B and C to Exhibit A, Settlement Agreement.** What the Named Plaintiff and the Defendants herein have agreed to is to set up a settlement fund and give each and every member of the putative class the option to share in that fund. No putative class member is bound by this Settlement, unlike in a Rule 23 class action, which unless they affirmatively opt out, wipes out their legal rights and their claims. Thus, courts, including this Court, agree that early settlement of a large collective action, even at the pre-certification stage, not only is fair and reasonable,

but in the best interests of all.  See *Venable v. JW Logistics, Supra,* approving a pre-notice FLSA national collective action without need for any secondary fairness hearing; See also *Vogenberger v. ATC Fitness Cape Corl LLC, Ruddell v. Manfree, Buccaneers* cases (supra).

**E The Notice of Settlement and Consent to Join/Claim Form Should be Approved**.

To facilitate this Settlement, this Court should authorize the Parties to mail notice of this Settlement to provide Collective Members the opportunity to participate through the distribution of opt-in forms under section 216(b). *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Fla.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008). The notice procedures provided under Section 216(b) permit potential plaintiffs to participate in the settlement by filing a consent to join form, while providing that those who do not elect to do so will not be bound by the outcome of the case.  The Parties agree that the proposed Notice of Settlement and Consent to Join/Claim Form contained in Exhibits B and C of the Settlement Agreement fairly and clearly inform Collective Members of their legal options with respect to participating, or not, in the settlement of this litigation. Further, the Named Plaintiff and the Current Opt-In Plaintiffs are receiving a separate Notice of Settlement, and which apprises them of the opportunity to receive

additional consideration for execution of a separate stand alone general release.  See Exhibit A to the Settlement Agreement

## V.    ATTORNEYS' FEES AND COSTS

The Settlement Agreement provides for Plaintiffs' counsel (class counsel) to receive up to 33.33% of the gross settlement amount as a reasonable amount of attorneys' fees (often referred to as a common fund fee).  Defendants agreed in negotiating this settlement, and as set forth in the Settlement Agreement, not to oppose a fee of thirty-three percent (33.33%) of the gross settlement amount.  Most recently the US District Court for the Middle District of Florida in a similar FLSA collective action case in *Dozier* approved of the plaintiffs' attorneys receiving ⅓ or 33.333% of the common fund as their fees and declared the same as reasonable on the face and consistent with awards in similar cases in this District.  "Even if the parties did not negotiate the attorneys' fees separately and without regard to the amount paid to Plaintiffs, an award of attorneys' fees representing 33% of the common fund is reasonable. See, e.g., *Freeman v. Trainingwheel Corp., LLC,* Case No. 2:19-cv-52-FtM-NPM, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) (approving settlement agreement in an FLSA collective action and finding an attorneys' fees award constituting 30% of a common fund reasonable where "the attorneys' fees were not agreed upon separately and without regard to the amount paid to [p]plaintiffs"); *Mosley*, *v. Lozano Ins. Adjusters*, No. 3:19-cv-379-J-32JRK,

2021 U.S. Dist. LEXIS 15971 (M.D. Fla. Jan. 11, 2021) (approving attorneys' fees representing approximately one-third of the gross settlement amount).  In approving the award of attorney's fees equivalent to 33.33% of the common fund, the Court declared: "The Court need not conduct an in-depth analysis of the attorneys' fees award where, as here, "the total fee award sought is not patently unreasonable and the Defendant does not contest the reasonableness of the award." *Freeman*, 2020 WL 7401488, at *3. Additionally, the undersigned also recommends that the requested award for reimbursement of costs in the amount of $22,826 is also fair and reasonable." *Dozier v. Dbi Servs., No. 3:18-cv-972-BJD-MCR*, 2021 U.S. Dist. LEXIS 245359, at *28-30 (M.D. Fla. Dec. 22, 2021) (Court order approving Report and Recommendation at:  *Dozier v. Dbi Servs*., No. 3:18-cv-972-BJD-MCR, 2022 U.S. Dist. LEXIS 10912 (M.D. Fla. Jan. 19, 2022).  The honorable CHARLES A. PANNELL, JR., of this Court in *George v. Acad. Mortg. Corp*., 369 F. Supp. 3d 1356 (N.D. Ga. 2019) likewise approved the requested 33.33% attorney's fee in an FLSA Collective Action Settlement.

Plaintiffs' counsel thus seeks to be awarded 33.33% of the $1,750,00000 gross settlement fund for their attorney's fees, (the sum of $583,275.00) to compensate them for risks, their incurred attorneys' fees and time incurred in this action, and reimbursement of the litigation costs and expenses they have incurred representing the Named Plaintiff, the Current Opt-In Plaintiffs, and fighting and litigating this

24

FLSA 216(b) collective action for one (1) full year in this case, in addition to all the time spent preceding the filing of the complaint, performing necessary investigation and preliminary legal work to prepare this large scale FLSA collective action. Moreover, with over one thousand potential collective members, as happens in FLSA cases and particularly in FLSA collective action settlements, the plaintiff attorneys aka class counsel, will be expected to counsel hundreds of present and former employees who receive notice of this settlement.  Assuming 1 hour per person, the Plaintiffs' counsel here can absolutely face the reality of having to put forth another, unrecoverable $425,000 in legal fees going over the case, and the settlement with the class members.

The Supreme Court and the 11th Circuit held that "attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *See also Boeing Co. v. Van Gemert, 444 U.S. 472 (1980); In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1362 (S.D.Fla. 2011) ("[T]he Eleventh Circuit made clear in Camden I that percentage of the fund is the exclusive method for awarding fees in common fund class actions").  Furthermore

another Court reiterated that the percentage of the Fund is the preferred method for compensating Plaintiff attorneys in class and collective actions involving recovery of a settlement fund. *Signorelli v. UtiliQuest, LLC*, No. 5:08-cv-38-OC-10GRJ, 2008 WL 7825757, LEXIS 109357 (MDFL 07/25/2008).

In an FLSA collective action, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960 (M.D. Fla. June 8, 2012). In addition, the FLSA provides for a mandatory award of "Costs of the action to a prevailing plaintiff." See 29 U.S.C. § 216(b); *Glenn v. Gen Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988). As reflected in the settlement agreement, Plaintiff's counsel seeks an approval of the reimbursement of just $$3,218.25for some (but not all) of the costs and expenses incurred so far in the 1 year of collective action litigation, including: the filing fee and process server charges. A copy of the costs supporting documents are attached as composite **Exhibit B**. Defendants do not oppose this request and agree that costs and expenses incurred should be reimbursed from the settlement fund as per the FLSA.

"Courts within this Circuit have awarded attorney's fees of approximately one-third of a common fund in FLSA and wage and hour cases." *George,* 369 F.

Supp. 3d at 1382 (Approving Common Fund that provides Class Counsel's fee paid at 33% of the $925,000 Settlement Fund, and an additional amount for costs and settlement administration costs); *See also* most recently in this District Court, *Dozier v. Dbi Servs.*, 2022 U.S. Dist. LEXIS 10912 (order approving Report and Recommendation of Magistrate approving of FLSA common fund settlement and payment of 33.33% (⅓) of the common fund as reasonable attorney's fees for Plaintiff's counsel, at: *Dozier v. Dbi Servs.*, No. 3:18-cv-972-BJD-MCR, 2021 U.S. Dist. LEXIS 245359 (M.D. Fla. Dec. 22, 2021); *Reyes v. AT & T Mobility Servs., Ltd. Liab. Co.*, No. 10-20837-Civ, 2013 WL 12219252, at *3, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D.Fla. June 21, 2013) (approving fees for FLSA collective action settlement, holding "Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.); *Adams v. Gilead Group, LLC, et. al.*, Case No. 3:16- cv-1566-J-PDB, ECF No. 107 (June 25, 2019) (awarding a few awards of 33% of the Settlement fund in an FLSA collective action, and an additional $9,996.94 for costs); *Freeman v. Trainingwheel Corp., LLC*, 2020 WL 7401488 (M.D. Fla. June 26, 2020) (Approving common Fund in FLSA Collective Action that provides plaintiff's counsel fees of 1/3 the Gross Settlement amount and reimbursement of their out-of-pocket costs).[2]    Furthermore, District Courts

---

[2] See also Vogenberger, 2015 WL 1883537 (awarding 33% of common fund to Plaintiff's counsel in FLSA collective action); Kemper v. Rent-A-Center, Inc., No. 4:00-cv-00435-RH-WCS [Dkts. 14-15] (N.D. Fla. 2000) (same); Graves v. Estes Heating & Air Conditioning, Inc., Case No. 3:14-cv-0084- TCB, Dkt. 47 (N.D. Ga. 2015)

throughout the Country regularly award 30% to 50% for fees in class and collective actions. See, e.g., *Whittington v. Taco Bell of Am., Inc.,* 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (Finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law in an FLSA collective action). Plaintiffs' counsel's request for approval of their common fund fee of 33% fee also falls within the range of the private marketplace, "where contingency-fee arrangements are often between 30 and 40 percent of any recovery." *George*, 369 F.Supp.3d at 1383.

Plaintiff's counsel took this case on a contingency basis, with a risk of $0 recovery and with an agreement of the Named Plaintiff that provides for the payment of attorneys' fees in the amount of 33.33%. Because of this contingency fee arrangement, Plaintiff's counsel has not received any payment for any of their time litigating the case since 2021, nor have they received reimbursement for their out-of-pocket costs expended. Furthermore, Plaintiffs' counsel, Mitchell Feldman, Esq. has extensive experience litigating wage and hour class actions and FLSA collective actions for 2 decades and in numerous district courts including those in Florida, Connecticut, New York, and Georgia. Further, the results in this matter, in the

---

(awarding fee of 33.33% of the common fund in FLSA case);Encarnacion v. J.W. Lee, Inc., 2015 WL 6437686, at *4 (S.D. Fla. Oct. 22, 2015) (approving class and FLSA collective action settlement of $6,000,000, which included $1,641,686.06 as attorneys' fees and $18,763.94 for costs.); Stahl, 2008 WL 2267469 (Approving attorney award of 28.8% of the $13,137,365 common fund, or $3,659,365 for fees and costs in wage and hour class action); Signorelli v. Utiliquest LLC, 5:08-cv-38-OC-10GRJ, Docket Entry 46 (July 25, 2008) (Hodges, J.) (awarding $3,000,000.00 for attorneys' fees out of the $10,000,000.00 common fund); Kreher v. City of Atlanta, Georgia, 2008 WL 113999561 (N.D. Ga. Sept. 30, 2008) (Approving common fund in FLSA Collective action that provides Plaintiff's counsel $2,410,000 from a $7,500,000 common fund, or 32.13%); Mosley v. Lozano Insurance Adjusters, Inc., 2021 WL

opinion of Plaintiffs' counsel, are excellent and warrant such an amount, given Defendant's vigorous defenses and the results obtained on the Plaintiffs' behalf as outlined herein. The approximately 2 hours of overtime for each eligible workweek obtained for the Plaintiffs and the individual recovery for each Plaintiff in the range of many thousands of dollars, in unpaid wages including liquidated damages for the Plaintiffs is a very excellent result. Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful, time consuming and costly litigation to recover overtime pay for workers they believe were not paid for all hours worked, and as to whom Defendants asserted and denied throughout this litigation were owed even $1.00 in back wages. In discussing the inherent risk of prosecuting a FLSA collective action litigation on a contingency fee, and approving the requested fee of 33.33% of the Gross Settlement Fund in a similar FLSA collective action case, this Court (NDGA) stated:

"In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. . . . That risk warrants an appropriate fee. Indeed, a "contingency fee arrangement often justifies an increase in the award of attorney's fees." *Lunsford*, 2014 WL 12740375, at *14, 2014 U.S. Dist. LEXIS 200716, at *43 (citing Sunbeam, 176 F.Supp.2d at 1335 (quoting Behrens, 118 F.R.D. at 548); see also In re Continental Ill. Sec. Litig., 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award"))."

*George*, 369 F. Supp. 3d at 1380–8. The record here leaves no doubt that the fee request is appropriate and comports with fees awarded in similar cases.

## **CONCLUSION**

This FLSA Collective Action Settlement Agreement is fair and reasonable and provides for the allocation of unpaid overtime wages for each and every workweek that every Plaintiff and class member worked during the extended 3-year SOL, regardless of whether any person even worked overtime in the workweek, and without having to litigate over the overtime hours for the next year or more. This is an excellent result. A fund of $1,750,000.00 is the equivalent of 2 hours per workweek of overtime hours for 97.5% of the eligible workweeks for all Plaintiffs. The Parties negotiated this settlement at arm's length, and through a formal mediation and have made an informed, arm's length negotiated compromise of disputed claims for overtime wages that provides every similarly situated Collective Member the opportunity to receive compensation for each week they worked, and if anyone so chooses otherwise, they are not required to opt in and they could pursue their own claims individually. This Settlement, as well, is similar to many FLSA settlements previously approved in this District and in the 11th circuit.

In sum, the Parties submit that their FLSA Collective Action Settlement Agreement represents a fair and reasonable resolution of the disputed issues and claims for overtime wages for Named Plaintiff Austin, all the Current Opt-In

Plaintiffs and all Collective Members, and that its entry will ensure to "secure the just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. Rule 1. Accordingly, the Parties urge this Court to grant the Motion, approve this Settlement Agreement, including issuing an order approving Plaintiffs' Counsel's request for attorneys' fees and costs, and authorize notice to Collective Members of their opportunity to participate in the benefits of this Settlement.  See Exhibits A-B to Exhibit A.

**WHEREFORE**, Plaintiff Austin, and Defendants who do not oppose this Motion, respectfully requests that this honorable Court approve the Settlement Agreement between the Parties, authorize the distribution of the Class Notice of Settlement attached as Exhibits A and B to Exhibit A, and dismiss this action with prejudice.[3]  The Parties agree that this is a fair settlement and that it is in both of their best interests to resolve this matter, to pay the settled claims, and dismiss this matter.

As of this writing, Defendants who have reviewed and approved this motion and Plaintiffs seeking approval of the settlement, have not yet provided their signed settlement agreement, which was drafted by Defendants and approved by all parties,

---

[3] Federal courts have previously approved the sending of one notice that alerts potential class members of the settlement of the action at the same time alerting them of their option to become a part of the action.  See e.g., Kevin Vogenberger v. ATC Fitness Cape Coral, LLC, et al., 2015 WL 1883537 (M.D. Fla. April 24, 2015); Grassick v. Avatar Properties, Inc., 2008 WL 5099942 (M.D. Fla. Nov. 25, 2008).

and Plaintiffs anticipate Defendants' will submit their signed agreement in keeping

with prior communications confirming and approving the settlement.

Respectfully submitted, this 20th day of May 2022.

/s/ *Mitchell L. Feldman*
MITCHELL L. FELDMAN, ESQ.
Florida Bar No. 0080349
mfeldman@flandgatrialattorneys.com
FELDMAN LAW GROUP, P.A.
6916 W. Linebaugh Ave. Suite #101
TAMPA, FL 33603
Telephone: (813) 639-9366
Facsimile: (813) 639-9376
*Attorneys for Named Plaintiffs and*
*Opt-In Plaintiffs*